UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DONALD MACK BENNETT,                              :
                                                  OPINION & ORDER
               Plaintiff,                         :
                                                  08 Civ. 9979  (GWG)

     -v.-                                         :

DR. TRACEY JAMES et al.,                          :

               Defendants.                        :
-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Donald Mack Bennett has filed a pro se complaint under 42 U.S.C. § 1983 raising allegations of deliberate indifference by medical staff from February through April 2008 while he was a pretrial detainee at the Westchester County Jail in Valhalla, New York. The parties have consented to this matter being decided by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Defendants have filed a motion for judgment on the pleadings, which we treat as a motion for summary judgment. For the reasons discussed below, Bennett's claims against defendants are dismissed.

I.     BACKGROUND

       A.     Bennett's Allegations

Bennett alleges that in February 2008 he was held as a pretrial detainee at the Westchester County Jail in Valhalla, New York ("Westchester County Jail"). See Complaint Under the Civil Rights Act, 42 U.S.C. § 1983, filed May 29, 2009 (Docket # 7) ("2d Complaint"); Inmate Classification Status Notification, dated Feb. 16, 2008 (annexed as Ex. D to Notice of Motion, filed Apr. 16, 2010 (Docket # 30) ("Notice of Motion")). During his detention, medical staff misdiagnosed him. See 2d Complaint at 3. As a result, he was

prescribed both antibiotic cream and pills which triggered a severe reaction that caused swelling, itching and other irritation around his genitals and upper thighs. See id. He alleges that defendant Dr. Tracy James prescribed him an antibiotic cream and defendant Dr. Goldberg of the Chronic Care Unit wrote him a prescription for "a very strong [] antibiotic" to treat Bennett for herpes. Id. However, he was later told by another staff member, Nurse Practitioner Maria Taylor, that the herpes diagnosis was incorrect. Id. He alleges that Dr. James "decided to make [him] suffer" by ordering another staff member, Dr. Bailey, not to "give [him] anything." Id. In addition, the "Chronic Care Doctor," presumably Dr. Goldberg, refused to see him for four months. Id.

Bennett contends that as a result of defendants' "mal-practice [sic]" and "[n]egligence of many dis-order [sic][,]" he suffered considerable pain. Id. He had difficulty "walking and bending or going to [the] bathroom" and further alleges that the cream turned him "into a vegetable unable to focus on correct thinking." Id.

Bennett alleges that the treatment at issue occurred between February and April 2008. Id. at 2. He admits in his complaint that he never filed a grievance concerning these allegations. Id. at 4. He also asserts that he never informed any official of the problem, stating in his complaint that it was "none of there [sic] business/plus they [sic] hands are tied when it comes to medical problem[s]. They don't [sic] get involv[ed]." Id. at 5.

      B.      Procedural History and Evidence Concerning Exhaustion

Bennett signed his original complaint in this matter on August 4, 2008, see Complaint Under the Civil Rights Act, 42 U.S.C. § 1983, filed Nov. 18, 2008 (Docket # 2), and filed the current complaint on May 29, 2009, see 2d Complaint. On January 14, 2010, District Judge

William H. Pauley III held a telephone conference. See Transcript of Proceeding held on Jan. 14, 2010, filed Feb. 18, 2010 (Docket # 25) ("Tr."). During the telephone conference, Judge Pauley questioned Bennett about not filing a grievance in this case. Id. at 9. Bennett admitted that he had filed grievances in the past but had not filed one alleging that he was prescribed the wrong medication in 2008. Id. at 12. Bennett also made the following statement:

> No, I have not send the grievance. I explained to you that I went with the 1983 because I was doing a shorter time, county time, and then when it came around for the grievance and I did want to write it, they told me, this is what they told me, Oh, it's too late now, you can't do it now, you can't fill out no grievance now, which, by the law, the correction law, you know, there's no, there's specific guide for them to have five days, they answer you back. And there's times where I was never answered back. Against medical too, against medical.

Id. at 14.

Following the telephone conference, Bennett filed a document entitled "Motion to Denie [sic] Grievance Issue because said reasons against Plaintiff," in which he asserted he was told that he could not grieve matters concerning medical staff. See Motion to Denie [sic] Grievance Issue because said reasons against Plaintiff, filed Jan. 26, 2010 (Docket # 24) ("Pl. First Mot."). In his motion, Bennett urges the Court to allow his medical records to "take the place of Grievances." Id. at 3. He also attached copies of five letters from the State Commission of Correction, dating from October 28, 2009 through July 9, 2009, some of which informed Bennett that the Citizen's Policy and Complaint Review Council had denied grievances he had filed – presumably relating to other medical matters. See Letters, dated Oct. 28, 2009, Nov. 17, 2009, June 10, 2009, June 16, 2009, July 9, 2009 (annexed to Pl. First Mot.).

On April 16, 2010, defendants moved for judgment on the pleadings on the grounds of failure to exhaust and failure to state a claim. See Notice of Motion; Memorandum of Law in

3

Support of Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, filed Apr. 16, 2010 (Docket # 31) (Def. Mem.); Notice to Pro Se Litigant Who Opposes a Rule 12(c) Motion for Judgment on the Pleadings, filed Apr. 16, 2010 (Docket # 32) ("Notice to Pro Se Litigant"). In support of their motion, defendants submitted an affidavit from Anthony Amicucci, the warden of the Westchester County Jail, who avers that Bennett received the Inmate Rules and Regulations handbook at the start of his detention which advised him of the grievance process and its steps. See Affidavit, dated Apr. 14, 2010 (annexed as Ex. E to Notice of Motion) ("Amicucci Aff.") ¶ 6. Amicucci also states that a review of the grievance logs for the period of February 2008 to May 2008 does not contain a record showing that Bennett ever attempted to file a grievance in connection with his allegations. Id. ¶ 17.

Bennett responded on May 17, 2010. See Notice of Motion Against Defendants Summary Judgment, filed May 17, 2010 (Docket # 35) ("Pl. Mot."). He also submitted a sixth letter from the Commission of Corrections denying a grievance dated January 20, 2010. See Letter to Donald Mack Bennett from Daniel L. Stewart, dated Jan. 20, 2010 (annexed to Pl. Mot. at 27) ("January 20, 2010 Letter"). On the face of this letter he wrote: "proof of Den[y]ing every Grievance." Id. Defendants filed a reply on June 3, 2010. See Reply Memorandum of Law, filed June 3, 2010 (Docket # 36).

In their motion papers, the defendants submitted documents outside the pleadings to support their position that this case should be dismissed on exhaustion grounds. They failed to provide Bennett with proper notice informing Bennett of what steps he was required to take to respond to their motion as required by Local Civil Rule 12.1. Instead, defendants sent Bennett a notice that discussed only what constituted a proper response to a motion for judgment on the

pleadings under Rule 12(c).  See Notice to Pro Se Litigant.  They also failed to include a copy of the Federal Rule of Civil Procedure 56, as required by Local Rule 12.1.

Accordingly, this Court issued an Order providing Bennett with the proper Rule 12.1 notice and a copy of Rule 56.  See Order, filed July 7, 2010 (Docket # 38) ("July 7, 2010 Order").  The Order also granted Bennett another opportunity to supply any additional evidence on the question of exhaustion.  See id.  In response, Bennett filed a document to which he attached an affidavit that reiterated assertions made in his prior submissions.  See Notice of Motion, filed July 12, 2010 (Docket # 39) ("July 12 Resp.").  He also alleged, for the first time, that he could not exhaust due to "threats" and that his failure to exhaust should be excused because he suffered from severe emotional distress, heart problems, seizures and was hospitalized in 2008 and 2009.  See Affidavit, dated July 9, 2010 (annexed to July 12 Resp. at 11) ("Bennett Aff.").[1]

## II. GOVERNING LEGAL PRINCIPLES

### A. Summary Judgment Standard

While the defendants have moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), they have also submitted affidavits in support of their motion on the issue of exhaustion.  Where such materials are considered by a court, "the motion must be treated as one for summary judgment," disposed of as provided in Fed. R. Civ. P. 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); accord Friedl v. City of N.Y., 210 F.3d 79, 83 (2d Cir. 2000)

---

[1] Plaintiff also filed a second document entitled "Notice of Motion."  Notice of Motion, filed June 10, 2010 (Docket # 37).  Because this document does not address the exhaustion issue, we do not discuss it further.

(where materials outside the pleadings are presented on a motion to dismiss, a court "must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material") (citations and internal quotations omitted)).

Here, the Court issued an Order that provided plaintiff with notice that he was required to submit evidence on the exhaustion question. See July 7, 2010 Order. The Order contained a notice that warned plaintiff that this Court might treat the defendants' motion as a motion for summary judgment under Fed. R. Civ. P. 56 and informed the plaintiff of his obligation to submit evidence. Id. The notice informed plaintiff that if he did not provide "affidavits or documentary evidence contradicting the facts asserted by the defendant, the court may accept defendant's factual assertions as true." Id. at 3. Accordingly, we treat the defendants' motion as one for summary judgment on the issue of exhaustion.

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact "may reasonably be resolved in favor of either party" and thus should be left to the finder of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a

judgment as a matter of law, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) (citation and internal quotation marks omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case." Nebraska v. Wyoming, 507 U.S. 584, 590 (1993) (citation, internal quotation marks, and brackets omitted). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citation omitted); accord Feurtado v. City of N.Y., 337 F. Supp. 2d 593, 599-600 (S.D.N.Y. 2004).

        B.     Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of . . . administrative remedies through the highest level for each claim is required." Veloz v. New York, 339 F. Supp. 2d 505, 514 (S.D.N.Y. 2004) (citation omitted), aff'd, 178 F. App'x 39 (2d Cir. 2006); see also Porter v. Nussle, 534 U.S. 516, 524 (2002) ("All available remedies must now be exhausted; those

7

remedies need not meet federal standards, nor must they be plain, speedy, and effective.") (citations and internal quotation marks omitted)).  In addition, the exhaustion must be "[p]roper" – that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006).

The Westchester County Department of Corrections Inmate Rules and Regulations Handbook describes the grievance procedure in place at the Westchester County Jail.  See Inmate Rules and Regulations Handbook (annexed as Ex. E(2) to Notice of Motion) ("Inmate Handbook"), at 5-6.  Prior to filing a formal grievance, inmates must make an informal complaint to the Block Officer who is required to record the complaint in a log book and attempt to resolve the matter informally.  Id. at 5.  If the complaint cannot be resolved informally by either the Block Officer or the Section Supervisor, an inmate may file a formal grievance, the forms for which are available from the Block Officer or the facility's law library.  Id.  The rules provide that "[g]rievances must be filed within five (5) calender days of the incident which gave rise to the grievance."  Id.  A Grievance Coordinator must issue a written decision within five days, following which the inmate has two days to appeal the decision to the Facility Grievance Coordinator.  Id.  The Facility Grievance Coordinator must issue a decision on the appeal within five business days.  Id.  An inmate has three days to appeal a determination by the Facility Grievance Coordinator to the New York State Commission of Correction's Citizen's Policy and Complaint Review Council.  Id.

The rules provide that "[a]lmost anything can be the subject of a Grievance," and lists only the following matters as "non-grievable":

>   (a) Dispositions or sanction from Disciplinary Hearings.
>   (b) Administrative Segregation housing decisions.
>   (c) Issues outside the control of the Chief Administrative Officer.
>   (d) Complaints pertaining to an inmate other than the inmate filing the grievance.
>   (e) A grievance that is too vague to understand or fails to set forth supporting evidence. Failure to supply sufficient evidence within Two (2) days shall be cause to deny the grievance.

Id.

Failure to exhaust administrative remedies under the PLRA is an affirmative defense, see Jones v. Bock, 549 U.S. 199, 216 (2007), and thus the defendants have the burden of proving that Bennett's claims have not been exhausted, see, e.g., Key v. Toussaint, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (citations omitted).

III.   DISCUSSION

The defendants have offered proof that Bennett did not file grievances with respect to his medical claims prior to filing suit. They cite to Bennett's own statement in his complaint that he did not file a grievance. See Amicucci Aff. ¶¶ 16-17; 2d Complaint at 3-5. In addition, at the January 14, 2010 conference before Judge Pauley, Bennett admitted that he filed his section 1983 complaint without first filing a grievance. See Tr. 14 ("I went with the 1983 because I was doing a shorter time . . . and then when it came around for the grievance and I did want to write it, they told me . . . it's too late now."). Furthermore, the defendants' search of grievance logs for the period of February 2008 to May 2008 does not contain a record showing that Bennett ever attempted to file a grievance in connection with his allegations. Amicucci Aff. ¶ 17. Because there is no dispute that Bennett failed to exhaust his remedies, we next turn to the question of whether Bennett comes within any of the exceptions to the exhaustion requirement.

The Second Circuit has held that a prisoner is not required to exhaust where:

> (1) administrative remedies are not available to the prisoner;
> (2) defendants have either waived the defense of failure to exhaust or acted in such [a] way as to estop them from raising the defense; or
> (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero v. County of Orange, 467 F.3d 170, 175-76 (2006) (quoting Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Bennett's submissions offer several reasons for not exhausting his administrative remedies in this case. First, he states that "I plaintiff was told my issue was not grievable." 2d Complaint at 4; accord Bennett Aff. ("administrative remendies [sic] were not available being told is was not agrievable [sic] issue"). Second, Bennett alleges he was the subject of "threats." See Bennett Aff. Third, Bennett submits copies of several letters from the State Commission of Correction after the filing of the instant complaint that either instruct him to use the "facility grievance program," instruct him to "file a written complaint with the Superintendent of the facility in question," or inform him that the Commission had voted to deny a grievance Bennet had filed. January 20, 2010 Letter; Letters, dated Oct. 28, 2009, Nov. 17, 2009, June 10, 2009, June 16, 2009, July 9, 2009 (annexed to Pl. First Mot.). On one of these letters, dated January 20, 2010, Bennett writes by hand: "proof of Den[y]ing every Grievance." January 20, 2010 Letter. Finally, Bennett claims his failure to exhaust should be excused because he suffered from severe emotional distress, heart problems, seizures, and was hospitalized in 2008 and 2009. Bennett Aff. ("plaintiff has not submitted grievance behind reason in complaint & plaintiff 'life-sustaning Disabilities of A-Phiberllation [sic] and Massive Grand-Mal Seizures & Heart Attacks . . . being hosptialized and was not in no Condition to proceed with all my suffering.").

Accordingly, we examine whether these explanations are sufficient to bring Bennett

10

within any of the exceptions to exhaustion outlined by the Second Circuit.

      A.      <u>Allegations of Threats or Misinformation as to Grievability</u>

With respect to Bennett's claims that he was "told" that his medical complaints were non-grievable or that he was the subject of "threats," 2d Complaint at 4; Bennett Aff., the Second Circuit has recognized that "defendants' actions may estop them from raising non-exhaustion as a defense," <u>Ruggiero</u>, 467 F.3d at 178, in cases of, <u>inter alia</u>, threats, retaliation, and denial of grievance forms or writing implements, <u>see</u> <u>Hemphill</u>, 380 F.3d at 687; <u>Ziemba v. Wezner</u>, 366 F.3d 161, 162 (2d Cir. 2004). Bennett, however, provides only the most conclusory allegations on these topics. He provides no information as to who threatened or misinformed him – or where or when these alleged interactions took place. He states only that "Plaintiff was denied & Ignored the Grievance Procedure by threats." Bennett Aff.

On the issue of being "told" that his medical complaints were not grievable, Bennett similarly provides only a conclusory assertion. He states: "Plaintiff confirms that the Grievances Exhaustion administrative remedies were not available being told is was not agreivable [sic] issues. we cannot interfere with the Medical Dept." <u>Id.</u> This statement also lacks any detail as to the time, place, or persons involved.

Notwithstanding the "deference to which a <u>pro se</u> litigant is entitled, as well as the deference accorded to a non-movant on a summary judgment motion[,]" Bennett "must produce specific facts to rebut the movant's showing and to establish that there are material issues of fact requiring a trial." <u>Almanzar v. Newland</u>, 2010 WL 1379739, at *6 (S.D.N.Y. Mar. 26, 2010) (citation and internal quotations omitted) (finding plaintiff's "vague allegations" insufficient to demonstrate his efforts to exhaust); <u>Winston v. Woodward</u>, 2008 WL 2263191, at *9 (S.D.N.Y.

May 30, 2008) (allegations of threats and harassment that "stand alone and unsupported" insufficient to defeat summary judgment on question of exhaustion) (quoting Veloz, 339 F. Supp. 2d at 516); Veloz, 339 F. Supp. 2d at 516 (dismissing suit for failure to exhaust where plaintiff "offers no evidence that any particular officer thwarted his attempts to file"). Here, Bennett does not provide the Court with any evidence to support a finding that defendants acted to interfere with his ability to exhaust. See Bennett v. Bailey, 2010 WL 1459192, at *5 (S.D.N.Y. Apr. 9, 2010) (plaintiff's contention that an "unidentified medical officials told him that pursuing a grievance would be 'a waste of time' . . . falls far short of conduct amounting to the denial [of] administrative remedies to a prisoner" (citation omitted)); Murray v. Palmer, 2010 WL 1235591, at *5 (N.D.N.Y. Mar. 31, 2010) ("Plaintiff failed to offer any credible evidence at the hearing that Defendant['s] in any way interfered with Plaintiff's ability to file grievances during the time in question.") (citing cases)).

      Indeed, on the issue of Bennett's knowledge of the rules regarding grievances, defendants offer evidence that Bennett received the facility's Inmate Rules and Regulations handbook, which includes a description of the grievance program. See Amicucci Decl.¶¶ 6-7. While the handbook exempts certain categories of complaints from the program, medical matters are not included in the list of non-grievable issues. See Inmate Handbook at 5.

      Accordingly, plaintiff has provided no evidence that would allow a reasonable factfinder to conclude that the defendants should be estopped from requiring compliance with the facility's grievance process.

      B.    Futility of Exhaustion

Bennett has submitted letters from the State Commission of Correction, some of which

deny grievances. He has written on the face of one of them: "proof of Den[y]ing every Grievance." January 20, 2010 Letter. To the extent Bennett means to argue that the denial of other grievances – which occurred long after the events at issue – excused him from filing grievances in this matter because of his belief that the filing of grievances was futile, that argument must be rejected. "It is well established that the PLRA's exhaustion requirement cannot be waived based upon the plaintiff's belief that pursuing administrative remedies would be ineffective or futile." Berry v. City of N.Y., 2002 WL 31045943, at *7 (S.D.N.Y. June 11, 2002) (collecting cases); see also Shariff v. Coombe, 655 F. Supp. 2d 274, 286 (S.D.N.Y. 2009) ("Plaintiffs' perception . . . that the filing of grievances was futile" insufficient to sustain contention that administrative remedies were unavailable) (collecting cases)).

      C.     Bennett's Physical and Mental Condition

Bennett's allegations regarding his physical and mental condition might raise the question of whether were "special circumstances" excusing his failure to exhaust. But "[a]bsent an allegation by the inmate that his failure to exhaust was based on a reasonable but erroneous interpretation of prison regulations, the special circumstances exception is generally inapplicable." McDowall v. Metro. Corr. Ctr., 2010 WL 649744, at * 7 n.4 (S.D.N.Y. Feb. 22, 2010) (collecting cases); see generally Newman v. Duncan, 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) ("[T]he special circumstances exception under Hemphill concerned an inmate's justifiable confusion regarding the proper DOCS procedure for filing an expedited grievance, not an inmate's mental or emotional condition." (citing Hemphill, 380 F.3d at 689-91)).

Even assuming that an inmate's physical or mental condition could excuse exhaustion, or might equitably toll the five-day deadline for filing a grievance, Bennett has not made a

sufficient showing here.  While Bennett argues that his physical and emotional condition in 2008 and 2009 should excuse his failure to exhaust, <u>see</u> Bennett Aff., the factual assertions to support these claims are presented once again in only conclusory form.  No dates are given as to when Bennett was allegedly unable to file grievances or what other activities he was unable to engage in.  While Bennett has submitted medical records with his opposition papers and has invited the court to examine them, <u>see</u> Bennett Aff; July 12 Resp., nothing in these papers makes clear that he was physically or mentally unable to comply with the grievance process.  Moreover, Bennett's claims on this point are inconsistent with the allegations contained in his own complaint, in which he alleges that he filed two separate federal lawsuits in "March 2008" and on "March 31, 2008." 2d Compl. at 6.   They are also inconsistent with the reasons for his failure to exhaust that were stated in his complaint, where he asserted that he never informed any prison official because it was "none of there [sic] business/plus they [sic] hands are tied when it comes to medical problems.  They don't [sic] get involv[ed]." 2d Compl. at 5.  Accordingly, Bennett has not presented facts allowing a factfinder to conclude that he should be excused from the exhaustion requirement.

<u>Conclusion</u>

   For the foregoing reasons, the defendants' motion to dismiss is granted.  The Clerk is requested to enter judgment dismissing the complaint.  Any pending motions are moot.

   SO ORDERED.

Dated: September 16, 2010
   New York, New York

                _____
                GABRIEL W. GORENSTEIN
                United States Magistrate Judge

Copies to:

Donald Mack Bennett
#5233
Westchester County Jail
P.O. Box 389
Valhalla, NY 10595

Fay Angela Jones
Westchester County Attorney's Office
600 Michaelian Office Building
148 Martine Avenue
White Plains, NY 10601

sufficient showing here. While Bennett argues that his physical and emotional condition in 2008 and 2009 should excuse his failure to exhaust, see Bennett Aff., the factual assertions to support these claims are presented once again in only conclusory form. No dates are given as to when Bennett was allegedly unable to file grievances or what other activities he was unable to engage in. While Bennett has submitted medical records with his opposition papers and has invited the court to examine them, see Bennett Aff; July 12 Resp., nothing in these papers makes clear that he was physically or mentally unable to comply with the grievance process. Moreover, Bennett's claims on this point are inconsistent with the allegations contained in his own complaint, in which he alleges that he filed two separate federal lawsuits in "March 2008" and on "March 31, 2008." 2d Compl. at 6. They are also inconsistent with the reasons for his failure to exhaust that were stated in his complaint, where he asserted that he never informed any prison official because it was "none of there [sic] business/plus they [sic] hands are tied when it comes to medical problems. They don't [sic] get involv[ed]." 2d Compl. at 5. Accordingly, Bennett has not presented facts allowing a factfinder to conclude that he should be excused from the exhaustion requirement.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss is granted. The Clerk is requested to enter judgment dismissing the complaint. Any pending motions are moot.

SO ORDERED.

Dated: September 15, 2010
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

14